CT/RMT
ORIGINAL

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
**FILED**

DROP BOX
MAR 1 1 2009
5:01

CLERK, U.S. DISTRICT COURT

By _____
            **Deputy**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### FORT WORTH DIVISION

| | | |
|---|---|---|
| JOHN P. GILLIG, et al | § | |
| | § | |
| Plaintiffs, | § | CIVIL ACTION NO. 4:08-CV-743-A |
| | § | |
| vs. | § | |
| | § | |
| NIKE, INC., | § | |
| | § | |
| Defendant. | § | |
| | § | |
| | § | |

## JOHN P. GILLIG AND TRIPLE TEE GOLF, INC.'S
## RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS
## THE COMPLAINT AND FOR SANCTIONS, AND BRIEF IN SUPPORT THEREOF

## **TABLE OF CONTENTS**

Page

I.  **INTRODUCTION AND PROCEDURAL BACKGROUND**............................1

II. **THE RELEVANT LEGAL STANDARD ON A MOTION TO DISMISS**...................................................................................2

III. **THE DOCTRINE OF *RES JUDICATA* DOES NOT BAR PLAINTIFFS' CLAIMS**...............................................................3

    A.  TTG's Claims Are Not Barred By *Res Judicata* Because They Could Not Have Been Asserted In The Earlier case................................3

    B.  Gillig's Trade Secret Claims Are Not Barred By *Res Judicata* Because The Court Found That He Was Not In Privity With TTG And Therefore He Is The Only Party-in-Interest That Could Bring These Claims.............................................................4

    C.  The Doctrine Of *Res Judicata* Does Not Bar John P. Gillig's Inventorship Claims...............................................................7

IV. **THE STATUTE OF LIMITATIONS DOES NOT BAR PLAINTIFFS' CLAIMS**..................................................................................8

    A.  Gillig's Claims Are Not Time-Barred Because The Statute Of Limitations Was Tolled................................................................8-9

    B.  Limitations Should Be Tolled Due To A Misnomer or Misidentification..........9

    C.  No Statute Of Limitations On Inventorship Claims Under 35 U.S.C. 256.........12

V.  **28 U.S.C. §1927 SANCTIONS SHOULD NOT APPLY**...................................13

    A.  The Undisclosed Patent Applications ...................................................13

    B.  Venue In The Southern District of Florida Was Appropriate.......................15

    C.  Allegations Of Bias.......................................................................16

    D.  Gillig Should Not Be Sanctioned For Asserting His Rights.........................17

VI. **CONCLUSION**...............................................................................17

**CERTIFICATE OF SERVICE**..............................................................19

## TABLE OF AUTHORITIES

PAGE

**FEDERAL CASES**

Advanced Cardiovascular Systems v. Sci-Med. Life Systems, Inc., 988 F.2d 1157
(Fed. Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Advanced Magnetics, Inc., et al, 29 F.3d 1570 (Fed. Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . 12

Bell Atlantic Corp. v. Twombly, 550 U.S. 554, 127 S.Ct. 1955) . . . . . . . . . . . . . . . . . . . . . . . . . 2

Campbell v. Wells Fargo Bank, 781 F.2d 400 (5th Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Collins v. Morgan Stanley, 224 F.2d 496 (5th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3

Edwards v. General Motors Corp., 153 F.3d 242 ((5th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . 13

FDIC v. Bledsoe, 989 F.2d 805 (5th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Hansberry v. Lee, 311 U.S.32, 61 S.Ct. 115, L.Ed. 22 (1940) . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Harris County v. Carmax, 177 F.3d 306 (5th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

In re Katrina Canal Breaches Litig., 495 F.3d 191 (5th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . 2

Jackson v. Johnson, 950 F.2d 263 (5th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Kaiser Aluminum & Chem. Sales v. Avondale Shipyards, 677 F.2d 1045 (5th Cir. 1982) . . . . . 2

Martin v. Wilks, 490 U.S. 755, 109 S.Ct. 2180, L.Ed.2d 835 (1989) . . . . . . . . . . . . . . . . . . . . . . 6

Maza v. General Battery Corp., 908 F.2d 1262 (5th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Nat'l Am. Ins. Co. v. Breaux, 368 F.Supp.2d 604 (E.D. Tex. 2005) . . . . . . . . . . . . . . . . . . . . . . . 5

Proctor & Gamble Co v. Amway Corp., 376 F.3d 496 (5th Cir. 2004) . . . . . . . . . . . . . . . . . . . . 4

Southwest Airlines Co. v. Tex. Int'l Airlines, Inc., 546 F.2d 84 (5th Cir. 1977) . . . . . . . . . . . . 5

Stark v. Advanced Magnetics, Inc., et al, 29 F.3d 1570 (Fed. Cir. 1994) . . . . . . . . . . . . . . . . . 12

Case 4:08-cv-00743-A   Document 52   Filed 03/11/09   Page 4 of 24   PageID 699

Steinert v. Winn Group, 440 F.3d 1214 (10th Cir. 2006) ............................... 13

**STATE CASES**

Castro v. Harris County, 663 S.W.2d 502 (Tex. App.–Houston [1st Dist.] 1983,
        writ dism'd) ....................................................... 10

Cavitt v. Amsler, 242 S.W. 246 (Tex. Civ. App.–Austin 1922, writ dism'd) ............... 8

Chilkewitz v. Hyson, 22 S.W.3d 8225 (Tex. 1999) ................................... 12

Continental S. Lines, Inc. v. Hilland, 528 S.W.2d 828 (Tex. 1975) ...................... 10

Diamond v. Eighth Ave., 92 L.C., 105 S.W.3d 691 (Tex. App.–Fort Worth (2003) ...... 11, 12

Dougherty v. Gifford, 826 S.W.2d at 677 ........................................ 10, 12

Ealey v. Insurance Co. of N. Am., 660 S.W.2d 50 (Tex. 1983) ........................... 11

Enserch Corp. v. Parker, 794 S.W.2d 2 (Tex. 1990) ................................... 11

Fields v. Austin, 30 S.W. 386 (Tex. Civ. App. 1895, writ ref'd) ......................... 8

Gaddis v. Smith, 417 S.W.2d 577 (Tex. 1967) ........................................ 9

Howell v. Coca-Cola Bottling Co. of Lubbock, Inc. 595 S.W.2d 208
        (Tex. Civ. App.–Amarillo) writ ref'd n.r.e. per curiam 599 S.W.2d 801 (Tex. 1980) .. 10

Hughes et al v. Mahaney & Higgins et al, 821 S.W. 154 (Tex. 1991) ..................... 8

Lemon v. Spann, 633 S.W.2d 568 (Tex. App.–Texarkana 1982, writ ref'd n.r.e.). ........... 5

Palmer v. Enserch Corp., 728 S.W.2d 431 (Tex. App.-Austin 1987, writ ref'd n.r.e.) ........ 10

Pease v. State, 228 S.W. 269 (Tex. Civ. App.–El Paso 1921, writ ref'd) ................... 8

Pierson v. SMS Fin. II, L.L.C., 959 S.W.2d 343 (Tex. App.–Texarkana 1998, no pet) . 10, 11, 12

Uniform Mfg. v. Earl's Apparel, Inc., 2007 WL 2390749
        (Tex. App.-Eastland 2007, no pet) ........................................ 12

Walker v. Hanes, 570 S.W.2d 534 (Tex. Civ. App.–Corpus Christi 1978, writ ref'd n.r.e. ..... 8

Weisz v. Spindletop, 664 S.W.2d 423 (Tex. App.-Corpus Christi 1983, no writ) . . . . . . . . . . . 8

Willis v. Maverick, 760 S.W.2d 643 (Tex. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Womack Mach. Supply Co. of Houston v. Fannin Bank, 499 S.W.2d 917
      (Tex. Civ. App.–Houston [14th Dist.] 1973), rev'd on other grounds
      504 S.W.2d 827 (Tex. 1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12

## RULES, REGULATIONS, STATUES, AND CODES

Fed. R. Civ. P. 12(b)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3

Fed. R. Civ. P. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Fed. R. Civ. P. 20 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 17

28 U.S.C. 1391(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

28 U.S.C. 1391(a)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

28 U.S.C. § 1927 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 17

35 U.S.C. 256 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 12

Tex. Civ. Prac. & Rem. Code ¶ 16.010 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

## OTHER AUTHORITIES

6 Am. Jur.2d Assignments 102 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

2 McDonald Texas Civil Practice § 9.61 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

5 Wright & Miller, Federal Practice and Procedure § 1357 . . . . . . . . . . . . . . . . . . . . . . . . . . 3

## I.    INTRODUCTION AND PROCEDURAL BACKGROUND

On January 21, 2004, Triple Tee Golf, Inc. ("TTG") filed suit in civil action No. 04-60082 against defendants Nike, Inc. ("Nike), Impact Golf Technologies, Inc. ("IGT") and John Thomas Stites, III ("Stites") alleging trade secret misappropriation, breach of confidential relationship, breach of contract implied in law, negligent misrepresentation, declaration of inventorship, Lanham Act, false designation of origin and deceptive trade practices. ("TTG I"). (Nike App. 1-29) [1]

On July 13, 2005, this Court granted Defendants' motion for summary judgment. (Nike App. 94-106).

On appeal, the Fifth Circuit Court of Appeals affirmed in part, but reversed this Court's grant of summary judgment. (Nike App. 181-211) The court determined that TTG had produced sufficient summary judgment evidence to meet the "genuine issue of material fact" standard as to whether defendants used any elements of TTG's design or concepts. (Nike App. 210-211) The court also determined that this Court erroneously disregarded the relevance of certain patent applications to its evidentiary orders that laid the foundation for its summary judgment. (Nike App. 210)

On remand, the case proceeded to trial. Shortly before the case was to be tried, Nike filed a motion to dismiss TTG's complaint based on TTG's alleged lack of standing. (Gillig App. 105-127) This Court converted the motion to dismiss into a motion for summary judgment and granted defendants' motion. (Nike App. 291-372)

---

[1] Contemporaneously with it motion, Nike filed an appendix. Gillig and TTG likewise filed an appendix with their response. Nike's appendix will be referred to as "Nike App" and Gillig and Tripe Tee Golf's appendix will be referred to as "Gillig App" followed by the specific page where the evidence supporting the assertion may be found.

In its Memorandum Opinion and Order, this Court found that there was no evidence of an assignment to TTG of Gillig's trade secrets rights. (Nike App. 334-35)  The Court determined that TTG failed to raise a genuine issue of fact that it had standing and dismissed TTG's case. (Nike App. 333-34)  On appeal, the Fifth Circuit affirmed. (Nike App. 475-76)

John P. Gillig ("Gillig") and TTG thereafter initiated the present suit against Defendant Nike in Civil Action No. 08-22845 in the U.S. District Court for the Southern District of Florida. In their Complaint, Gillig and TTG assert, *inter alia*, the claims upon which the Fifth Circuit had earlier determined TTG could pursue. (Nike App. 456-597)  Upon Nike's motion, this case was transferred to the Northern District of Texas. (Nike App. 626-637)

A final determination on the merits of whether Nike misappropriated Gillig's trade secrets has never been reached.

## II.  THE RELEVANT LEGAL STANDARD ON A MOTION TO DISMISS

The Federal Rules of Civil Procedure authorize the dismissal of a complaint if the face of the pleadings reflects that the plaintiff has failed to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6).  In considering a Rule 12(b)(6) motion to dismiss, the court must accept all well-pleaded facts in the pleadings as true and view them in the light most favorable to the plaintiff. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir.2007).  To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must "plead enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 127 S.Ct. 1955, 1974.

A motion to dismiss under rule 12(b)(6) "is viewed with disfavor and is rarely granted." *Collins v. Morgan Stanley*, 224 F.2d 496, 498 (5th Cir. 2000) (citing *Kaiser Aluminum & Chem. Sales v. Avondale Shipyards*, 677 F.2d 1045, 1050 (5th Cir. 1982)).  The complaint must be

liberally construed in favor of the plaintiff, and all facts pleaded in the complaint must be taken as true. *Campbell v. Wells Fargo Bank,* 781 F.2d 440, 442 (5th Cir. 1986).

The strict standard of review under Rule 12 (b)(6) has been summarized as follows: "The question therefore is whether in the light most favorable to the plaintiff and with every doubt resolved in his behalf, the complaint states any valid claim for relief." *Collins,* 224 F.2d at 498 (citing 5 WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE §1357, at 601 (1969)).

### III. THE DOCTRINE OF *RES JUDICATA* DOES NOT BAR PLAINTIFFS' CLAIMS

### A. TTG's Claims Are Not Barred By *Res Judicata* Because They Could Not Have Been Asserted In The Earlier case.

In its motion, Nike argues that TTG's claims are barred by *res judicata*. Nike, however, cannot satisfy step four of the Fifth Circuit's four-part test because the same claim or cause of action is not involved in both actions.

In their complaint, Gillig and TTG allege certain facts that could not form the basis of the action in TTG I. Indeed, some of the facts that *did not even* occur or become actionable *until after 2005,* long after the filing of the last operative complaint in TTG I. (Nike App. 512-513, ¶¶ 87-91) For example, Gillig and TTG allege that "since 2006 NIKE has generated several new products, applications for patent, and patents that are predicated upon trade secrets originally communicated by Plaintiffs to IGT, through Stites, communicated to NIKE through MAKSYM, *and/or communicated to NIKE during depositions of Plaintiffs in 2004-05,* these including without limitation, the SLINGSHOT Hybrid, the SLINGSHOT 3D Irons; SQ, SQ SUMO, and SUMO 2 Hybrids, Drivers and Fairway Woods; U.S. Patent Application Publications U.S. 2005/0009635 A1; U.S. 2007/1078988 A1. U.S. 2007/0111820 A1; U.S. 2007/0298903 A1; and

U.S. 2007/0207878 A1; and U.S. Patent 7,108,609." (Emphasis added). (Nike App. 513, ¶ 89) The present complaint also includes causes of action under 35 U.S.C. §256 related to the patents that *did not form any basis of the action in TTG I*.[2] This Court recognized this fact when it stated that, "[w]hile the existence of the patent applications might form the *basis for another action by plaintiff against defendants,* the patent applications were not relevant to the legal issues the court resolved in favor of defendants, against plaintiff, in this case." (emphasis added). (Nike App. 143) The Fifth Circuit agreed with this Court's conclusion that "the patent applications might form the basis of another action by TTG." (Nike App. 210)

Gillig and TTG allege claims that could not have been brought in the earlier action. This Court expressly recognized that these claims related to patents that could form the basis for another action by plaintiff against defendants. (Nike App. 143) Thus, the fourth prong of the Fifth Circuit's four-part test as enunciated in *Proctor & Gamble Co. v. Amway Corp.*, 376 F.3d 496, 499 (5th Cir. 2004) is not met and the doctrine of *res judicata* does not bar TTG's claims in the present action.

**B.    Gillig's Trade Secret Claims Are Not Barred By *Res Judicata* Because The Court Found That He Was Not In Privity With TTG And Therefore He Is The Only Party-in-Interest That Could Bring These Claims.**

In its motion, Nike seeks to apply the doctrine of *res judicata* to bind Gillig to this Court's final judgment in TTG I.  Nike, however, cannot meet step one of the Fifth Circuit's four-part test because this Court found that Gillig and TTG are not "in privity" with regard to the ownership of the trade secrets.

In TTG I, the Court found that TTG "failed to prove the existence of an assignment that gave it the right to initiate and prosecute this action." (Nike App. 350)  The Fifth Circuit

---

[2] TTG is a permissive plaintiff under Fed .R. Civ. P. 20 having a contingent interest in Gillig's inventorship claims.

affirmed, finding that TTG, "[n]ever received a right to sue on the claim at issue." (Nike App. 476)

Thus, under the Court's findings in its memorandum opinion and order, TTG never received an assignment from Gillig and therefore TTG lacked standing to sue on Gillig's claims of trade secret misappropriation. The Court's decision makes clear that Gillig and TTG are not in privity regarding the ownership of the trade secrets.

Gillig does not seek to relitigate the Court's final judgment in TTG I. Rather, Gillig seeks to assert his rights to pursue his claims of trade secret misappropriation based on this Court's final judgment in TTG I.

Defendant argues that since this Court determined that TTG lacked standing to sue on Gillig's claims of trade secret misappropriation that Gillig likewise lacks standing to sue on those claims. Defendant's position is ***directly opposed*** to this Court's factual findings in its memorandum opinion and order. This Court determined that TTG "failed to prove the existence of an assignment that gave it the right to initiate and prosecute this action." (Nike App. 350) Furthermore, this Court determined that there was no assignment from Gillig to TTG of his trade secrets. (Nike App. 351) Thus, Gillig retained his right to sue on his claims of trade secret misappropriation. The Fifth Circuit affirmed, finding that TTG "[n]ever received a right to sue on the claim at issue." (Nike App. 476) Thus, as per the Court's finding, Gillig and TTG were not in privity for the purpose of allowing TTG to assert Gillig's claims of trade secret misappropriation. Hence, there was no successive relationship between TTG and Gillig with regards to the trade secret rights at issue.[3]

---

[3] "Privity . . . means a mutual or successive relationship to the same rights of property." *Lemon v. Spann*, 633 S.W.2d 568, 570 (Tex. App.—Texarkana 1982, writ ref'd n.r.e.). Privity is merely another way of saying that there is sufficient identity between parties to prior and subsequent suits for *res judicata* to apply. *See Southwest Airlines Co. v. Tex. Int'l Airlines, Inc.*, 546 F.2d 84, 95 (5th Cir. 1977). In other words, privity connotes those who are in

This Court determined that TTG was not an assignee of Gillig's trade secrets and therefore did not stand in Gillig's shoes for the purpose of asserting Gillig's claims of trade secret misappropriation.[4] Hence, there was no successive relationship.

This Court determined that Gillig and TTG *did not have the same legal right*s regarding Gillig's trade secret rights and therefore TTG did not have standing. (Nike App. 333-34) The Fifth Circuit affirmed this finding. (Nike App. 475-76) Thus, the doctrine of *res judicata* does not bar Gillig's claims to the misappropriation of his trade secret rights, since Gillig and TTG were not in privity.

In its motion, Nike, pointing to the allegations in the complaint, claims that Plaintiffs conceded that Gillig was "in privity" with TTG. Nowhere does the complaint say anything of the sort. In addition, Nike relies upon a number of Fifth Circuit cases as support for its "privity" argument. None of these cases, however, are in any way similar to the facts and circumstances of this case where a court made a factual finding that no privity existed. Furthermore, Nike is collaterally estopped from alleging that Gillig is "in privity" with TTG because this issue was fully and fairly litigated in TTG I where this Court determined that there was no assignment.

It is a fundamental principle of American jurisprudence that a person cannot be bound by a judgment in litigation to which he was not a party. *Martin v. Wilks,* 490 U.S. 755, 109 S.Ct. 2180, 2184 (1989); *Hansberry v. Lee,* 311 U.S. 32, 40, 61 S.Ct. 115, 117 (1940). The prohibition against using the result of prior judicial proceedings to determine the rights of strangers to those proceedings is required by the due process guarantees of the Fifth and

---

law so connected with a party to the judgment as to have such an *identity of interest that the party to the judgment represented the same legal right*." *Nat'l Am. Ins. Co. v. Breaux,* 368 F. Supp. 2d 604, 621 (E.D. Tex. 2005). (emphasis added)

[4] It is a well established principle of law that an assignee stands in the shoes of his assignor. *FDIC v. Bledsoe,* 989 F.2d 805, 810 (5th Cir. 1993). *See also, 6 Am. Jur. 2d Assignments 102* (collecting cases).

Fourteenth Amendments.  The popular expression of this principle is that ***everyone is entitled to his own day in court.***  *Maza v. General Battery Corp.*, 908 F.2d 1262, 1266 (5th Cir. 1990). (emphasis added).  Gillig is entitled to his day in court.

**C.     The Doctrine Of *Res Judicata* Does Not Bar John P. Gillig's Inventorship Claims.**

Gillig's inventorship claims cannot be barred by *res judicata* because this issue was never adjudicated in any prior proceeding.  In fact, both this Court in TTG I and the Fifth Circuit indicated that TTG remained at liberty to proceed with its unresolved inventorship claims. Under the law of the case, Gillig is the proper party entitled to litigate inventorship in regards to the patent in Count III (Gillig App. 30-44) and three of the design patents addressed in Counts II and IV of the complaint (Gillig App 1-11).  In denying TTG's motion to amend without prejudice, the Court concluded:

> Well, I would imagine there would be a lot of questions that would be asked and a lot of discovery to be conducted on the patent issue if that has not been conducted so far, if defendants had known that was the issue.  I don't think I am going to allow the amendment as to the patent claims.

(Nike App. 87).  Accordingly, the patent claims relative to the design patents were simply never adjudicated.

The subject of inventorship of the other patents referenced in Counts III and IV of the complaint were not referenced in any context in TTG I.  (Gillig App/ 55-72) These patents were all issued after the last operative complaint and during the pendency of the first appeal of TTG I. (Design patents are not published before grant). Because these four design patents were issued in 2006, these inventorship claims could not have been brought by TTG in TTG I.

**IV.  THE STATUTE OF LIMITATIONS
DOES NOT BAR PLAINTIFFS' CLAIMS**

**A.     Gillig's Claims Are Not Time-Barred Because The Statute Of Limitations Was Tolled.**

Defendant claims that Gillig's claims are barred by limitations. During the pendency of the appeals, however, Gillig was precluded from filing a stand-alone *de novo* complaint in either this or any other court. *Harris County v.* Carmax. 177 F.3d 306, 317 (5th Cir. 1999).[5] It has long been the law in Texas that where "a person is prevented from exercising his legal remedy by the pendency of legal proceedings, the time during which he is thus prevented should not be counted against him in determining whether limitations have barred his right." *Hughes v. Mahaney & Higgins,* 821 S.W. 2d 154, 157 (Tex. 1991); *see Walker v. Hanes*, 570 S.W. 2d 534, 540 (Tex. Civ. App.--Corpus Christi 1978, writ ref'd n.r.e.) (limitations tolled while prior submission of same case was being appealed); *Weisz v. Spindletop*, 664 S.W. 2d 423, 425 (Tex.. App.-Corpus Christi 1983, no writ); *Cavitt v. Amsler*, 242 S.W. 246, 249 (Tex. Civ. App--Austin 1922, writ dism'd) (limitations on suit for dividends tolled while suit to determine ownership of stock was being appealed); *Pease v. State,* 228 S.W. 269, 270-71 (Tex. Civ. App.--El Paso 1921, writ ref'd ) (plaintiff's cause of action in suit for salary did not accrue until final decision in *quo warranto* proceeding that defendant was not entitled to job); *Fields v. Austin,* 30 S.W. 386, 387 (Tex. Civ. App. 1895, writ ref'd) (cause of action for rent did not accrue until appeals exhausted on suit to determine title to land); *see also Jackson v. Johnson*, 950 F. 2d 263, 265 (5th. Cir. 1992).

A person must bring suit for misappropriation of trade secrets not later than three years after the misappropriation is discovered or by the exercise of reasonable diligence should have been discovered. Tex. Civ. Prac. & Rem. Code Ann. § 16.010. The period of limitations for a tort action "run[s] from the date the plaintiff discovers or should have discovered, in the exercise of reasonable care and diligence, the nature of the injury. *Willis v. Maverick*, 760 S.W.2d 642, 644 (Tex. 1988) (*citing Gaddis v. Smith,* 417 S.W.2d 577, 578 (Tex. 1967)).

---

[5] *See* Timeline (Gillig App 128).

The statute of limitations was tolled for 22 months while TTG I was on appeal.[6]  The limitations was likewise tolled for an 11-month period during the pendency of the second appeal of TTG I.  Accordingly, Gillig's claim would not be time-barred until 69 months from the date he knew or should have known of his claim.[7]

This Court noted that Gillig knew or should have known as of the date of Nike's first responsive pleading as early as June, 2004, that Nike questioned TTG's title to the trade secrets in question.  (Nike App. 362-71).  Thus, per this Court's finding, June 2004 is the starting point for calculating the limitations period as applied to Gillig's trade secret claims, since June 2004 was Nike's first responsive pleading [DE 32] to TTG's complaint in TTG I.  Thus, if June 2004 is the starting date for limitations on Gillig's trade secret claim, applying the sixty-nine month period, the statute of limitations period would not have run until March 2010.

Alternatively, limitations would not have run until November 2008.  In February 2003 Gillig first observed a new golf product displayed at Nike's booth at the PGA Golf Show in Orlando, Florida.  Nike's new golf product, the Nike CPR Club, bore a remarkable resemblance to a product disclosed to John T. Stites.  (Nike App. 509, ¶ 69)  Accordingly, even if one were to apply a February 2003 start date, Gillig's claim would not be time-bared until November 2008 or 69 months from the date he knew or should have known of his claim.[8]

**B.    Limitations Should Be Tolled Due To A Misnomer Or Misidentification.**

Statutes of limitations are designed to compel a party to file suit within a reasonable time so that the opposing party has a fair opportunity to defend while witnesses are available and

---

[6] See Timeline.  (Gillig App. 128)  As a matter of historical record, the duration of the appeal was approximately double that of a normal period for an appeal in the Fifth Circuit because of the impact of Hurricane Katrina upon the operations and business of the Fifth Circuit.

[7] 36 months (the original 3-year limitation) + 22 months (first appeal in TTG I) + 11 months (second appeal in TTG I).

[8] 36 months (the original 3-year limitation) + 22 months (first appeal in TTG I) + 11 months (second appeal in TTG I).

evidence is fresh. *Willis v. Maverick*, 760 S.W.2d 642 (Tex. 1988); *Continental S. Lines, Inc. v. Hilland*, 528 S.W.2d 828, 831 (Tex. 1975); *Dougherty v. Gifford*, 826 S.W.2d 668, 677 (Tex. App.-Texarkana 1992, no writ); *see also* 2 MCDONALD TEXAS CIVIL PRACTICE § 9:61 (rev. 1992).

But the statute of limitations should not apply in circumstances where no party is misled or disadvantaged by an error in pleading. *Dougherty*, 826 S.W.2d at 677; *Palmer v. Enserch Corp.*, 728 S.W.2d 431, 434 (Tex. App.-Austin 1987, writ ref'd n.r.e.). Further, the harshness of the statutes of limitations should be tempered when the proper defendant was knowledgeable of the facts and was not misled or placed at a disadvantage in obtaining relevant evidence to defend the suit. *Castro v. Harris County*, 663 S.W.2d 502, 505 (Tex. App.-Houston [1st Dist.] 1983, writ dism'd); *Howell v. Coca-Cola Bottling Co. of Lubbock, Inc.*, 595 S.W.2d 208, 212 (Tex. Civ. App.-Amarillo 1980, writ ref'd n.r.e.).

Misnomer occurs when a party misnames either herself or the opposing party in a pleading, but the correct parties are involved; misidentification occurs when a party named in the pleading is not the party with an interest in the suit. *Pierson v. SMS Fin. II, L.L.C.*, 959 S.W.2d 343, 347 (Tex. App.-Texarkana 1998, no pet). A plaintiff misnaming itself is a misnomer. *Id.* (misnomer occurred when actual plaintiff SMS II instead named another entity, SMS I). *Id.*

If a plaintiff merely misnames a correct defendant (misnomer), limitations is tolled and a subsequent amendment of the petition relates back to the date of the original petition. *Enserch Corp. v. Parker*, 794 S.W.2d 2, 4-5 (Tex. 1990); *Diamond v. Eighth Ave.*, 92 L.C., 105 S.W.3d 691, 695 (Tex. App- Fort Worth 2003, no pet).

In *Pierson*, the actual plaintiff (SMS II) misnamed itself, and instead named another entity (SMS I), i.e., a misnomer. Thus, the petition related back to the original, and the statute did not bar the claim. *Pierson v. SMS Fin. II*, 959 S.W.2d at 347.

In *Womack Mach. Supply Co. of Houston v. Fannin Bank*, 499 S.W.2d 917, 920 (Tex. Civ. App.-Houston [14th Dist.] 1973), *rev'd on other grounds*, 504 S.W.2d 827 (Tex. 1974), the court held that bringing suit in the name of the parent company instead of its subsidiary tolled the statute of limitations because the defendant was not misled or disadvantaged by the error. *Id.* at 53. The court reasoned that the original petition naming the wrong plaintiff, when considered in its entirety, gave the defendant fair notice. *Id.* at 52- 53. The court's reasoning in *Womack* on the statute of limitations issue was approved by the Texas Supreme Court. *Womack Mach. Supply Co. of Houston v. Fannin Bank*, 504 S.W.2d 827 (Tex. 1974). Additionally, this reasoning has been used and cited by the Texas Supreme Court in the workers' compensation area. *See Ealey v. Insurance Co. of N. Am.*, 660 S.W.2d 50 (Tex. 1983).

In this case, the correct defendants were sued in the correct court, and they knew the allegations, facts, and circumstances concerning the claims brought against them. Nike had proper notice of the claim being asserted against it well within the statute of limitations. Nike cannot show it suffered any disadvantage in obtaining relevant evidence to defend the present suit against Gillig simply because the original complaint named TTG. Thus, Gillig's complaint should relate back to the original complaint filed by TG in TTG I. *Pierson v. SMS Fin. II*, 959 S.W.2d at 347-348.

In Texas, to be entitled to equitable tolling, the plaintiff must show that the correct defendant had notice of the suit, was cognizant of the facts, and was not misled or disadvantaged by the mistake. *Chilkewitz v. Hyson*, 22 S.W.3d 825, 830 (Tex. 1999); *Diamond*, 105 S.W.3d at

11

695; *see also Uniform Mfg. v. Earl's Apparel, Inc.,* 2007 WL 2390749 at *5 (Tex. App.-Eastland 2007, no pet). In this case, the correct defendant had notice of the suit, was cognizant of the facts, and was not misled or disadvantaged. Thus, the filing date of Gillig's complaint should relate back to the complaint filed by TTG in TTG I to allow Gillig the right to assert his trade secret claims as the correct party in interest.

## C. No Statute Of Limitations Applies To Any Inventorship Claims Under 35 U.S.C. 256

There is no limitation-related bar to the inventorship claims. 35 U.S.C. § 256 does not limit the time during which inventorship may be corrected. *Advanced Cardiovascular Systems v. Sci-Med., Life Systems, Inc.,* 988 F.2d. 1157, 1162 (Fed. Cir. 1993); *Stark v. Advanced Magnetics, Inc., et al,* 29 F.3d 1570, 1572 (Fed. Cir. 1994). *Laches* also is inapplicable since six years have not elapsed since the earliest date of issuance of any of the patents at issue. *Advanced Cardiovascular,* at 1163.

Further, this Court indicated in its Order of November 28, 2005 that Gillig's inventorship claims relative to the patent applications which were the subject of TTG's unsuccessful motion to amend "might form the basis of another action" by TTG. (Nike App 143) Thus, it is not improper for Gillig to assert his patent inventorship claims because this Court has already ruled those rights may be asserted.

Gillig's right to seek to correct the inventorship of U.S. Design Patent Nos. D484,937; D499,781 and D499,782 (Gillig App. 1-11) was left untouched by the Court's ruling of May 9, 2005 (Nike App. 86-87). In regard to the other patents at issue (Gillig App. 55-95; Nike App. 518-520), these patents were issued later and were never mentioned in TTG I and could not have been since the date of the last operative pleading [DE 98] was also May 9, 2005.

## V.     SANCTIONS UNDER 28 U.S.C. § 1927 ARE NOT WARRANTED

Section 1927 provides that any attorney "who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." The statute requires "that there be evidence of bad faith, improper motive, or reckless disregard of the duty owed to the court*." Edwards v. General Motors Corp.*, 153 F.3d 242, 246 (5th Cir. 1998).

"The unambiguous statutory language necessarily excludes the complaint that gives birth to the proceedings, as it is not possible to multiply proceedings until after those proceedings have begun." *Steinert v. v. Winn Group,* 440 F. 3d 1214, 1225 (10th Cir. 2006*)*.

As discussed, neither Gillig nor TTG's claims are barred by either the doctrine *of res judicata* or the statute of limitations. As such, the Plaintiffs are entitled to assert them.

## A.     The "Undisclosed Patent Applications"

The fact that, in 2005, TTG's former counsel inadvertently misidentified one of defendants' so-called "undisclosed patent applications" should not operate as an encumbrance upon Gillig to seek correction of inventorship of one of those two patents, following its maturity into an actual patent in 2007. This patent (Gillig App. 30-44) is contained in Count III of the present complaint.

The true nature and level of Nike's argument relative to the significance of the inadvertent representation in TTG I that the Patent Application No. US2005/0009625 A1, published January 13, 2005, and issued as U.S. patent in 2006 (Gillig App. 12-29), may be appreciated by a fair comparison of it to Gillig's illustrations (Gillig App. 96-103; Nike App. 584-588, 594, 596). Any comparison of the two indicates the remoteness, certainly in terms of appearance, between the drawings that Gillig purportedly showed to Stites in the year 2000 and

13

U.S. Patent No. 7,108,609 (Gillig App. 12-29). For example, Fig. 2B of said patent (Gillig App. 15) and its underlying application (the publication of January 13, 2005) does not constitute a system which is truly user adjustable because of the many screws that must be inserted and removed into many holes for the user to gain access to, and use, the adjustable element therein. The embodiment of Fig. 10 of this Stites' patent (Gillig App. 23) would admittedly be slightly more end user adjustable. However, it relates to an iron-type club -- a category that Gillig and Stites did not discuss.

The patent application (which, without question, was not disclosed by defendant responsive to applicable discovery requests) relates to a club having true end-user adjustability to regulate characteristics of ball flight. This is U.S. Published Application No. U.S. 2005/0137024 A1, published June 23, 2005, and which matured into U.S. Patent No. 7,201,669 B2, in 2007. (Gillig App. 30-44). A review of the drawings of this application with Gillig's sketches (Gillig App. 102) renders inescapable its relevancy to the disclosures of Gillig to Stites than anything which appears in the January 2005 published patent (Gillig App. 12-29).

The relevance of the date of publication of June 23, 2005 of the application which matured into a patent (Gillig App. 30-44) and which is subject of Count III of the present complaint, may be appreciated with reference to the timeline of the case. The pertinent portions of the docket history of the predecessor application are included in Plaintiffs' Appendix at Tab 6. Based on the docket report, one may appreciate the significance of the date June 23, 2005 in the procedural history of TTG I. On May 13, 2005, defendant Nike submitted its Motion for Summary Judgment [DE 134] on all counts of Plaintiff's Third Amended Complaint. [DE104]. On that date, TTG did not and could not have known of Application Publication Number US 2005/0137024 A1 because it had not yet issued and had not been disclosed by Nike in response

14

to earlier discovery requests. Thereafter, on June 6, 2005, TTG filed its opposition to Nike's dispositive motion, on which date the patent (Gillig App. 30-44) had not yet been published and thus was unknown to plaintiff.

On July 13, 2005, the Court entered final Judgment against TTG [DE 168/169]. Thereafter, upon learning of the existence of Nike's patent application, published June 23, 2005, TTG filed a motion for relief from final judgment [DE 185] on October 11, 2005. This motion was denied by the Court on November 28, 2005 [DE 192] and a Notice of Appeal filed by TTG on December 6, 2005 [DE 193]. From there the matter proceeded to appeal, ultimately resulting in the Fifth Circuit's decision. The court stated,

> We acknowledge that the patent applications were not technically relevant to the narrow grounds on which the district court decided defendant's Summary Judgment Motion. Once the District Court decided that the only issue it needed to consider was whether Defendant had used TTG's trade secrets *in the accused clubs*, the patent application evidence presumably could not have been allowed in this case. [Emphasis in original text].

(Nike App. 209-210) Additionally, the Court's order granting summary judgment did not address and therefore was not preclusive with regard to the issue of inventorship relative to the so-called non-disclosed patent applications, one of which is now the subject of the present litigation. (Nike App. 142-43)

**B.** **Venue In The Southern District Of Florida Was Appropriate**

Nike complains that plaintiffs brought suit in an improper venue. Under 28 U.S.C. 1391(b), venue for inventorship claims attached in Plaintiffs' home district in Florida. Thus, Gillig had every right to present the patent inventorship claims in his home district in Florida.

Further, venue was proper in the Southern District of Florida under 28 U.S.C. 1391(b) and (c) because defendant engaged in repeated solicitations of business in the Southern District

of Florida and defendant is subject to personal jurisdiction in Southern District of Florida, since defendant may be found there.

In addition, venue in the Southern District of Florida was proper under 28 U.S.C. 1391(a)(2) because, defendant conceived of, and/or assisted in, and/or furthered, a conspiracy to commit torts against Gillig and TTG, and the effects thereof occurred in the Southern District of Florida.

## C.   **Allegations Of Bias**

With regard to Gillig's declaration pertaining to the bias of the Court, his declaration was corroborated in part by comments which the Court itself made.  On July 10, 2007, at another hearing held before this Court (Plaintiffs' App. Tab 11, p. A-087, Lns. 18-19, the Court stated:

> And Mr. Suder is obviously *still* thinking about somehow or other he might get a home in Florida and maybe a ski lodge in Colorado out of this case.

(Gillig App. 87) (emphasis added)  The above remarks are wholly consistent with the statement of ¶5 of Gillig's Declaration in opposition to Defendant's Motion to Re-Assign the Case. (Nike App. 649)

Thereafter, at the hearing on July 10, 2007, the Court stated:

> Mr. Van Es, if one of the thoughts the defendants have is that they might win outright before trial, I think you need to reflect on what the Fifth Circuit said.  They ordered me to hold a trial, and I haven't figured out a way around that *yet.*

(Gillig App. 88-89) (emphasis added)  The above remarks are consistent with Gillig's statement of ¶8 of his Declaration.   (Nike App. 650)

Thus, defendant's request for sanctions under 28 U.S.C. §1927 is without merit and should be denied.

**D.**     **Gillig Should Not Be Sanctioned For Asserting His Rights.**

Gillig should not be sanctioned for asserting rights which were left intact at the conclusion of TTG I. The statute of limitations and the doctrine of *res judicata* do not bar Gillig's right to assert a claim in trade secret in his own name. In view of the Court's denial of TTG's motion under Fed. R. Civ. P. 17, a successor action remained Gillig's only remedy. This conduct was not unreasonable or improper.

Plaintiffs note that TTG appears in the present matter as a potential third party beneficiary of Gillig's right of inventorship and therefore is a permissive plaintiff under Fed. R. Civ. P. 20.

Nike previously argued lack of privity of contract between Gillig and TTG; however now, for sanctions and other purposes, Nike has abruptly switched arguments and instead now asserts the existence of privity. This is a distortion of the law of the case and should not be the basis for sanctions.

For all these reasons, sanctions against Gillig or his counsel are wholly inappropriate.

## IV. CONCLUSION

**WHEREFORE**, Plaintiffs, John P. Gillig and Triple Tee Golf Inc., respectfully request that this Honorable Court enter an Order denying Defendant's Motion to Dismiss Plaintiffs' Complaint and denying Defendant's Motion for Sanctions and grant such further and other relief as this Court deems just and proper.

Respectfully submitted,

Melvin Silverman
NJ Bar No. 236011970
*Pro Hac Vice*
M. K. SILVERMAN & ASSOCIATES, P.C.
One Gateway Center, Suite 2600
Newark, NJ 07102
Ph: 973-508-5033
Fax: 973-622-3423
E-mail: mks@mkspc.com

LOCAL COUNSEL:

Joseph F. Cleveland, Jr.
Texas Bar No. 04378900
BRACKETT & ELLIS, P.C.
100 Main Street
Fort Worth, TX 76102-3090
Telephone: (817) 338-1700
Facsimile: (817) 870-2265
E-mail: jcleveland@belaw.com

OF COUNSEL:

Jacqueline Tadros
Florida Bar No. 497509
JACQUELINE TADROS, P.A.
500 West Cypress Creek Road, Suite 350
Fort Lauderdale, FL 33309
Ph: 954-3551-7479
Fax: 954-351-7417

ATTORNEYS FOR PLAINTIFFS
JOHN P. GILLIG AND
TRIPLE TEE GOLF, INC.

18

## CERTIFICATE OF SERVICE

I hereby certify that on  March 11, 2009, I served the foregoing Response via United States Postal Service, first class mail, on the attorneys for Defendant as follows

Michael H. Martin
Cotten Schmidt
420 Throckmorton Street, 5th Floor
Fort Worth, TX  76102

Michael J. Harris
Banner & Witcoff, LTD.
Ten South Wacker Drive
Suite 3000
Chicago, IL   60606.

_____
Joseph F. Cleveland, Jr.

19